STATE OF WEST VIRGINIA *ex rel.*

CLARENCE THOMAS MILLER

*v.*

HUNTER PAUL SMITH, JR.

*Prosecuting Attorney Of*

*Clay County, West Virginia*

(No. 15225)

Decided December 18, 1981.

*James Wilson Douglas* for relator.

*Chauncey H. Browning,* Attorney General, *and Thomas N. Trent,* Assistant Attorney General, for respondent.

MᴄGʀᴀw, Jᴜsᴛɪᴄᴇ:

This case comes before us on a writ of prohibition seeking to restrain the respondent, the Prosecuting Attorney of Clay County, from attempting to dissuade or discourage the grand jury from hearing the petitioner or any evidence he might have regarding a complaint which he seeks to lay before it. The petitioner contends that the use of persuasion by the prosecuting attorney to influence the decision of the grand jury whether or not to entertain the petitioner is an exercise of power beyond his jurisdiction. We find merit in this contention and grant a moulded writ.

The petitioner claims he was the victim of a malicious wounding perpetuated by two policemen on October 17,

1980. The petitioner prosecuted two criminal warrants against the accused perpetrators of the deed, which were dismissed by C. Velt King, a Clay County Magistrate. Subsequently, the petitioner submitted his evidence of the incident to the prosecuting attorney. According to the prosecuting attorney, his investigation of the incident revealed that late in 1980 the petitioner was stopped by a city patrolman and a deputy sheriff for driving under the influence. The prosecuting attorney contends, that when stopped by the officers, the petitioner resisted arrest, crawled under his car, kicked at the arresting officer and would not come out from under the car. The State admits in its brief that the incident which the petitioner describes as a malicious wounding occurred when the officers used chemical mace on the petitioner.[1] Based upon the results of his investigation, the prosecuting attorney determined not to present the matter before the grand jury attending the March 1981 term of the Circuit Court of Clay County.

Notwithstanding this decision, the petitioner advised the prosecuting attorney that he would be present on the day the grand jury was scheduled to convene, in order to petition the foreman for permission to appear and to submit evidence of the alleged offense. The respondent replied that he would invoke the powers of his office as prosecuting attorney to instruct the Sheriff of Clay County to prevent the petitioner from so petitioning the foreman of the grand jury, or from appearing before that, or any future, grand jury for the purpose of presenting evidence regarding this particular complaint.

---

[1] Instructions for the use of CHEMICAL MACE contain the following warning:

Chemical mace aerosal tear gas projectors are weapons . . . [they] are for the use only by police and other authorized law enforcement or security personnel. Contents may cause severe injury unless used according to these instructions and the directions contained in the Police Chemical Agent's Manual published by the I.A.C.P. Although, when properly used, it is less likely to cause injury than conventional weapons, it should be used only in situations where a weapon is justified and necessary.

Undaunted by the prosecuting attorney's warning, the petitioner and a corroborating witness appeared at the Clay County Courthouse on the day the grand jury was to meet. At that time the issue of his appearance before the grand jury was referred to the Honorable Albert L. Sommerville, Jr., Chief Judge of the Fourteenth Judicial Circuit. However, upon being made aware of the facts and issues involved, Judge Sommerville declined to intervene.

Although maintaining his earlier position, the respondent advised the petitioner that he would inform the grand jury that the petitioner was present and wished to appear before them to submit evidence of an alleged criminal offense. The prosecuting attorney, however, further advised the petitioner that he would also attempt to discourage and dissuade the grand jury from entertaining the petitioner or from hearing any evidence he might have to offer regarding his complaint. Following the respondent's presentation, the grand jury deliberated and voted not to hear evidence from the petitioner.

Subsequently the petitioner sought this writ of prohibition alleging that the actions of the prosecuting attorney with regard to the grand jury constitute an exercise of power beyond his jurisdiction.

This case presents three issues which are before this Court for the first time: (1) does a person have a lawful right to personally complain of a criminal offense to a grand jury, over the objection of the prosecuting attorney; (2) may a prosecuting attorney render unsworn testimony before a grand jury; and (3) does prohibition lie against a prosecuting attorney who attempts to stop a grand jury from hearing independent evidence.

These three issues concern the fundamental nature and purpose of the grand jury in our system of criminal justice. Therefore before addressing the issues raised by the petitioner we shall attempt a brief exposition of the history of the grand jury in order to illustrate the roles of the judge, the prosecutor and the citizen-complainant with regard to the grand jury.

The grand jury is an integral part of our judicial system with ancient origins. It appears to have derived from the Frankish custom of requiring folks to appear before the king with information of immediate concern to the administration of justice in the kingdom. W. Holdsworth, *A History of English Law* 312 (1903). When the Franks were conquered by the Normans the custom survived, and thus was brought to England by William the Conqueror in 1066. The records after the Norman conquest show an increased use of the sworn inquests of neighbors as a part of the system of royal justice. In fact, the great fiscal record, the Domesday Book, was compiled from the verdicts of these inquests. 1 F. Pollock and F. Maitland, *History of English Law*, 144 (2d ed. 1968).

During the reign of Henry II, a judicial device similar to that of our present day petit jury was used for the purpose of civil litigation with respect to land. The Grand Assize, the possessory assizes and the assize ultram each used this procedure to settle questions of ownership and possession of land. During Henry's reign the accusing jury also became a part of the judicial mechanism and developed a protective, in addition to its original investigative, function:

> Henry insisted, first for Normandy in the year 1159, and then for England in the year 1164, that the ecclesiastical courts ought to make use of this institution. Laymen ought not to be put to answer in those courts upon a mere unsworn suggestion of ill fame. Either someone should stand forth and commit himself to a definite accusation, or else the ill fame should be sworn to by twelve lawful men of the neighborhood summoned for that purpose by the sheriff: in other words, the ecclesiastical judge ought not proceed *ex officio* upon private suggestions.

> 1 F. Pollock and F. Maitland, *supra* at 151.

By the time of the Assize of Clarendon in 1166 the accusing jury had become a rather prominent institution. In every county, twelve men out of every "hundred" (a political subdivision of the shire) were called to appear before the itinerant judge appointed by the king. The

judge presented a list of crimes and offenses and asked the jurors whether they knew of anyone in the hundred who had committed the offenses enumerated. The jurors replied on the basis of their personal knowledge, and, based on their replies, the judge made a decision whether the accusations were well founded. *Petition of McNair*, 324 Pa. 48, 187 A. 498 (1936).

By the fifteenth century the grand jury system had become an established institution in the English judicial system and enjoyed a great popularity. This popularity was subsequently shared by the colonials in America. At the time of the American Revolution, the grand jury was perceived by most Americans as a highly esteemed institution, a perception enhanced by the spirit of independence and resistence to imperial government displayed by some of the colonial grand juries. Francis Hopkinson, a pamphleteer of the revolutionary period, reflected the popular attitude when he described the grand jury as "a body of truth and power inferior to none but the legislature itself." R. Younger, *The People's Panel: The Grand Jury in the United States (1631-1941)*, 41 (1963). Our founding fathers also shared in this sentiment. Thomas Jefferson, for example, referred to the grand jury as both the "true tribunal of the people" and as the "sacred palladium of liberty." S. Padover, *The Complete Jefferson* at 128 (1943).

Along with the resistance of the colonial grand juries to the British monarchy, one widely publicized English case enhanced immensely the prestige of the grand jury in America. The case involved Lord Ashley, Earl of Shaftsbury, who was implicated in a plot to assassinate the king and "[bring] this kingdom of England to a commonwealth without a king . . ." *Earl of Shaftsbury's Case*, 8 St.Tr. 759, 778 (1681). He was charged with high treason by the royal prosecutor, who presented the case to a grand jury in London. The grand jury refused to indict, and the popular Lord Ashley went free. This statement against absolute monarchial power has been cited for years as an example of the grand jury as a barrier against both the despotism of the Crown and prosecution based on "parti-

san passion or private enmity." *In re Russo*, 53 F.R.D. 564, 568 (C.D. Calif. 1971).

History shows us that although the grand jury developed as a "palladium of liberty," it could on occasion be made the vehicle of abuse. For example, the subsequent episodes of Shaftsbury's story do not portray the grand jury in so complimentary a fashion. When the Royalists rigged the election of two Tory sheriffs, who had the duty of selecting the grand jury, and a Tory Mayor of London was elected, the king was assured that the next grand jury would be more amenable to his designs for the Earl of Shaftsbury. Shaftsbury was forced to flee to Amsterdam, where he died in exile. Lewis, *The Grand Jury: A Critical Evaluation*, 13 Akron L. R. 38 (1979).

In recent years the grand jury has been criticized for the same type of abuses present in the later episodes of Shaftsbury's case, by those who believe it has become a tool of the prosecutor rather than fulfilling its original purpose. *See* Lewis, *The Grand Jury: A Critical Evaluation, supra*; Rodis, *A Lawyer's Guide to Grand Jury Abuse*, 14 Crim. L. Bul. 123 (1978). The grand jury as we know it today is a lineal decendant of the Thirteenth Century juries employed to screen criminal accusations and present evidence of criminal offenses, 1 W. *Holdsworth, supra* at 321, and is designed to fulfill much the same functions. Its primary responsibilities include the determination of whether there is probable cause to believe a crime has been committed, and the protection of citizens against unfounded criminal accusations. *See United States v. Calandra*, 414 U.S. 388, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Thus, historically the grand jury serves a dual function: it is intended to operate both as a sword, investigating cases to bring to trial persons accused on just grounds, and as a shield, protecting citizens against unfounded malicious or frivolous prosecutions.

Federal grand juries have not followed this historical mold as closely as have those of West Virginia. In recent years the function of the federal grand jury has shifted away from that of a shield between the citizenry and the government, towards that of a sword in the hands of the

United States Attorney. This shift is a result of the federal grand jury's evolution from that of an independent institution, to one dominated by the United States Attorney. *See* Zwerling, *Federal Grand Juries v. Attorney Independence and the Attorney-Client Privilege*, 27 Hastings L. J. 1263, 1268 (1978); Boudin, *The Federal Grand Jury*, 61 Georgetown L. J. 1 (1972). Evidence of this shift can be found in the recent development of various immunities afforded to witnesses before federal grand juries. *See, e.g.,* 18 U.S.C. §§ 6002-03 (1976); *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, *rehearing denied*, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972).

Such a shift in the function of the federal grand jury corrupts its historically developed fundamental principles. Fortunately, the West Virginia Constitution protects us from such abuse, for under the state constitution it is our sworn duty to support the fundamental principles upon which our legal institutions are founded. W. Va. Const. art. 3, § 20; art. 4, § 5. Heeding this constitutional directive, we are therefore bound to preserve the dual function of the grand jury as both sword and shield. We cannot permit its degradation into a De Torquemadian engine of persecution.

## I.

Our state constitution guarantees that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W.Va. Const. art. 3, § 17. We stated in *State ex rel. Skinner v. Dostert*, ___ W. Va. ___, 278 S.E.2d 624 (1981):

> "As criminal offenses are offenses against the State which must be prosecuted in the name of the State, W.Va. Code § 62-9-1 (1977 Replacement Vol.); *Moundsville v. Fountain*, 27 W.Va. 182 (1885), the prosecutor, as the officer charged with prosecuting such offenses, has a duty to vindicate the victims and the public's constitutional right of redress for a criminal invasion of rights. The

'spirit of law' has long been and it has been long held that '[t]he public has rights as well as the accused, and one of the first of these is that of redressing or punishing their wrongs.' *Ex parte Santee*, 2 Va. Cas. (4 Va.) 363 (1823)." 278 S.E.2d at 631.

The citizen who alleges that his rights have been criminally invaded is entitled to seek redress through the courts and is so entitled as a matter of constitutional right. Thus, the circuit court must guarantee that the grand jury is open to individual citizens seeking to redress wrongs by laying a complaint before it. *See Annot.*, 156 A.L.R. 330 (1945).

To fulfill its functions of protecting individual citizens and providing them with a forum for bringing complaints within the criminal justice system, the grand jury must be open to the public for the independent presentation of evidence before it. If the grand jury is available only to the prosecuting attorney and all complaints must pass through him, the grand jury can justifiably be described as a prosecutorial tool.

This ancient body, as a fundamental constitutional institution, must not be fettered or restricted to the degree that it is inaccessible to the citizens it was designed to serve and protect. We therefore hold that, by application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it. This principle of approachability lies in the foundation of the very concept of a grand jury. As with any institution, as it removes itself from the public and becomes inaccessible, it becomes more susceptible to abuse. The grand jury can maintain its accessibility and relevancy only through constant judicial vigilance. If the grand jury is to be a meaningful institution, its integrity must be maintained as an independent body, free from all outside interference and prosecutorial control or direction. This can only be insured by vigilance over the administration of justice, which is the duty of the

courts. *See generally State ex rel. Casey v. Wood,* 156 W. Va. 329, 193 S.E.2d 143 (1972).

## II.

The petitioner contends that in the course of the prosecuting attorney's attempt to dissuade the grand jury from hearing the petitioner's evidence, the prosecutor improperly rendered unsworn testimony relating to the circumstances surrounding the incident giving rise to the petitioner's complaint. We agree with the petitioner that such a course of action on the part of a prosecutor is clearly improper. It has long been established in West Virginia that the discussion of evidence before the grand jury, relating to an alleged crime the grand jury is then considering, by persons not sworn to testify as witnesses, will vitiate an indictment returned by the grand jury, whether they were actually influenced by such discussion or not. Syllabus Point 4, *State v. Wetzel,* 75 W. Va. 7, 83 S.E. 68 (1914). This rule applies equally to the prosecuting attorney as it does to any other witness not sworn to testify. A prosecuting attorney can only appear before the grand jury to present by sworn witnesses evidence of alleged criminal offenses, and to render court supervised instructions, W. Va. Code § 7-4-1 (1976 Replacement Vol.); he is not permitted to influence the grand jury in reaching a decision, nor can he provide unsworn testimonial evidence.

From the scant evidence before us on this point we are unable to determine whether the respondent did, in fact, render unsworn testimony before the grand jury, and we note that the respondent unequivocally denies any such allegation. Nevertheless, we wish to emphasize that any attempt by a prosecuting attorney to render unsworn testimony before a grand jury cannot be tolerated. Such unsworn testimony, particularly on the part of a prosecuting attorney, seriously threatens the integrity of the grand jury's judicial function and constitutes an ethical violation of standards of acceptable prosecutorial behavior. *See, e.g.,* 1 American Bar Association, *Standards for Criminal Justice* § 3.5 (2d ed. 1980).

## III.

We now come to the question of the propriety of prohibition in this case. Prohibition is a creature of the common law memorialized in the West Virginia Constitution as a power within the scope of this Court's original jurisdiction,[2] and incorporated into the statutory law of this State by the Legislature.[3] However, this Court has said that neither the constitution nor the applicable statute enlarges or narrows the scope of the writ of prohibition as it was known at common law. *State ex rel. City of Huntington v. Lombardo*, 149 W. Va. 671, 143 S.E.2d 535 (1965).

At common law prohibition was a remedy directed only at judicial tribunals. "Its office was to restrain subordinate courts and inferior judicial tribunals from extending their jurisdiction . . . ." 149 W. Va. at 677, 143 S.E.2d at 540. Thus prohibition does not lie to control a legislative body, *see Gates v. Council of City of Huntington*, 93 F. Supp. 757 (S.D. W.Va. 1950), nor to prevent an executive act. *Pollos v. Morris*, 112 W. Va. 287, 164 S.E. 661 (1932).

Prosecuting attorneys are executive officers,[4] *see* W.Va.

---

[2] W.Va. Const. art. VIII, § 3 provides in pertinent part: "The supreme court of appeals shall have original jurisdiction of proceedings in . . . prohibition . . . ."

[3] W. Va. Code § 53-1-1 (1981 Replacement Vol.) provides: "The writ of prohibition shall lie as a matter of right in all cases of ursurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.

[4] In a recent series of cases we have consistently referred to prosecuting attorneys as performing a quasi-judicial function. *See State v. Critzer*, ___ W. Va. ___, 280 S.E.2d 288 (1981); *State v. Nuckolls*, ___ W. Va. ___, 273 S.E.2d 87 (1980); *State v. Green*, 163 W. Va. 681, 260 S.E.2d 257 (1979); *State ex rel. Moran v. Ziegler*, 161 W. Va. 609, 244 S.E.2d 550 (1978); *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977). We do not disturb the holdings of these cases here. A prosecuting attorney is an officer of the court, as are all lawyers, and, when representing the State at trial, or before a grand jury, he exercises a quasi-judicial function. There is a distinction to be made, however, between an officer of the court, such as a prosecuting attorney or a lawyer, and a judicial officer, such as a magistrate or circuit judge. Only those individuals in the latter category are normally subject to a writ of prohibition.

Const. art. VII, § 1; *Code* 5-3-2 (1979 Replacement Vol.), 7-4-1, and in the performance of their executive duties they are not subject to the judicial writ of prohibition. *See Pollos v. Morris, supra.* The petitioner, however, has not requested this Court to prohibit the executive actions of a prosecuting attorney. Rather the petitioner seeks to prohibit the Prosecuting Attorney of Clay County from usurping the jurisdiction of a judicial tribunal, the grand jury.

In *State ex rel. City of Huntington v. Lombardo, supra,* we recognized that prohibition will lie when a purely ministerial body attempts to usurp a judicial function. *See also Smoot v. Dingess,* 160 W. Va. 558, 236 S.E.2d 468, 474 (1977) (Miller, J. concurring). Therefore if the actions of the respondent in this case constitute an usurpation of judicial power, prohibition will lie. The actions of the respondent of which the petitioner complains are his attempts to influence the grand jury regarding the independent presentation of evidence by a private citizen. Because we find that such actions on the part of the respondent constitute an usurpation of judicial power, we hold that prohibition is a proper proceeding in this case.

By attempting to influence the grand jury the respondent usurps both the power of the circuit court, and of the grand jury itself. The grand jury is an integral part of the judicial system and enjoys a special relationship with the court by which it is convened. *See State ex rel. Casey v. Wood, supra.* Because of this special relationship the court has a particular responsibility to insure the fairness of grand jury proceedings. When the prosecuting attorney attempts to influence the grand jury not to hear evidence which a citizen wishes to present, he improperly infringes the supervisory function of the circuit court.

Under West Virginia law, once a grand jury is properly selected, the judge appoints a foreman. W. Va. Code § 52-2-5 (1981 Replacement Vol.). After the appointment, the grand jury has an independent existence proscribed only by the court's limited supervisory powers, the grand juror's oath, and the applicable rules of criminal procedure. Once their oath is administered, the grand jurors become officers of the court with the duty to "diligently inquire and

true presentment make of all such matters as may be given you in charge or come to your knowledge ...." W. Va. Code 52-2-5. By attempting to dissuade the grand jury from hearing evidence the prosecuting attorney further usurps the judicial powers of the grand jury itself.

The role of the prosecuting attorney is relation to the grand jury is strictly circumscribed. The prosecutor's responsibility is to attend to the criminal business of the State, and when he has information of the violation of any penal law, to present evidence of those offenses to the grand jury. W. Va. Code § 7-4-1. Thus, the jurisdiction of the prosecuting attorney encompasses only the presentation of evidence. If instructions on law or the legal effect of evidence are in order, those instructions must come from the circuit court. *See* W. Va. Code § 52-2-6 (1981 Replacement Vol.). Any advice to the grand jury by the prosecutor is subject to court supervision. An attempt by the prosecuting attorney to discourage or dissuade the grand jury from hearing evidence is therefore outside his jurisdiction, and could rise to the level of obstruction of justice. *See* W. Va. Code § 61-5-17 (1977 Replacement Vol.).

Accordingly, we hold that a prosecuting attorney who attempts to influence the grand jury by means other than the presentation of evidence or the giving of court supervised instructions, exceeds his lawful jurisdiction and usurps the judicial power of the circuit court and of the grand jury. Consequently, prohibition will lie to prevent such usurpation of judicial power.

In summary, an individual citizen-complainant has a constitutional right to appear before a grand jury to present evidence of an alleged offense. A prosecuting attorney may not render unsworn testimonial evidence before the grand jury. Prohibition will lie against a prosecuting attorney who attempts to usurp the judicial function of the circuit court and of the grand jury by attempting to discourage it from hearing the independent presentation of evidence by a citizen complainant.

For the foregoing reasons we grant a moulded writ prohibiting the Prosecuting Attorney of Clay County from

attempting to persuade the Clay County Grand Jury not to hear the evidence which the petitioner seeks to present.

*Moulded writ granted.*