428 S.E.2d 535

**Andrew Keith PEYATT, Appellee,**

**v.**

**Donald L. KOPP, II, Magistrate, and Edmund J. Matko, Prosecuting Attorney for Harrison County, Appellants.**

**No. 20999.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided March 12, 1993.

Darrell V. McGraw, Jr., Atty. Gen., and Rodney L. Bean, Asst. Atty. Gen., Charleston, for appellants.

David J. Romano and Nancy Westmoreland Brown, Law Offices of David J. Romano, Clarksburg, for appellee.

McHUGH, Justice:

The State of West Virginia seeks review of an order of the Circuit Court of Harrison County which issued a writ of mandamus to compel the magistrate to reopen Andrew

Keith Peyatt's preliminary hearing, and issued a writ of prohibition against the prosecuting attorney to prohibit him from presenting any evidence or testimony to the grand jury regarding the charges against Mr. Peyatt until another preliminary hearing is conducted.

## I

Three arrest warrants were issued in June of 1991, charging Mr. Peyatt with three counts of first-degree sexual abuse. The incidents giving rise to the sexual abuse charges involving two female children were alleged to have occurred between September and November of 1989, at Mr. Peyatt's home.[1]

A preliminary hearing on the charges against Mr. Peyatt was held in August of 1991. Counsel on behalf of Mr. Peyatt subpoenaed both of the children to testify. He also issued subpoenas duces tecum to compel Lieutenant Jim Hotsinpiller, the investigating officer, and Terry Laurita, the social worker assigned to the case, to testify and provide any documents they had prepared or recordings they had made during their interviews with the children and their families.[2]

The State moved to quash the subpoenas issued to compel the children to testify on the grounds that the children were not prepared to testify and that it would be traumatic for them. The State also moved to quash the subpoenas duces tecum on the grounds that they were sought solely for discovery purposes, that they were irrelevant to the magistrate's probable cause determination, and that they were an improper matter for consideration in a preliminary hearing. Counsel on behalf of Mr. Peyatt contended that he had a right to

---

1. The criminal complaints filed against Mr. Peyatt state that, at the time the incidents allegedly occurred, one of the children was "between the ages of 5 years and 6 years," and that the other child was "less than eleven years of age[.]" At the time of the preliminary hearing, the two children were ages 8 and 13, respectively.

2. Counsel on behalf of Mr. Peyatt also subpoenaed the records' administrator at the Summit Center where the two minor children are receiving treatment, and issued a subpoena duces tecum, in an attempt to introduce the minor children's case records from the Summit Center. Counsel on behalf of Mr. Peyatt also sought to compel Terry Laurita, the children's counselor, to bring any documents, audio or video tape recordings and other information she may have which relate to the criminal investigation of Mr. Peyatt. The magistrate denied the motion to have the documents entered into the record.

confront his accusers, and that the magistrate needed to hear the testimony of the children in order to make a probable cause determination.

The magistrate, after hearing arguments on the State's motion to quash the subpoenas to compel the children to testify, granted the State's motion. The magistrate, however, reserved judgment on the State's motion to quash the subpoenas duces tecum in order to provide counsel on behalf of Mr. Peyatt an opportunity to demonstrate the relevance of this evidence to the probable cause determination. The magistrate ultimately granted the State's motion.

Following a three-day preliminary hearing, the magistrate found probable cause to hold Mr. Peyatt for grand jury action. Counsel on behalf of Mr. Peyatt then filed a petition seeking a writ of mandamus to compel the magistrate to conduct another preliminary hearing, and also seeking a writ of prohibition to prohibit the prosecuting attorney from presenting the matter to the grand jury. After hearing arguments on the petitions, the circuit court issued both writs.

## II

The State asserts that the circuit court erred in granting the writ of mandamus compelling the magistrate to conduct another preliminary hearing to allow the admission of additional evidence. Mr. Peyatt contends that the writ of mandamus was necessary to protect his constitutional rights to due process, compulsory process and effective assistance of counsel, and that the magistrate denied him a proper preliminary hearing when he refused to admit the testimony of the minor children.

■■■ As pointed out by the State, this Court has consistently recognized that a preliminary hearing is not a federal constitutional mandate, and that there is nothing in our State *Constitution* which would give an independent state constitutional right to a preliminary hearing.[3] Syl. pt. 1, *State ex rel. Rowe v. Ferguson,* 165 W.Va.

183, 268 S.E.2d 45 (1980); syl. pt. 1, *Gibson v. McKenzie,* 163 W.Va. 615, 259 S.E.2d 616 (1979). Rule 5 of the *West Virginia Rules of Criminal Procedure* provides, however, that a defendant is entitled to a preliminary hearing unless it is waived. *W.Va. R.Crim.P.* 5 further provides that the preliminary hearing shall not be held if the defendant is indicted or if an information is filed against the defendant in circuit court before the date of the preliminary hearing.

Preliminary examination of a defendant charged with a criminal offense is governed by Rule 5.1 of the *West Virginia Rules of Criminal Procedure.* *W.Va. R.Crim.P.* 5.1(a) provides:

**Rule 5.1. Preliminary Examination.** (a) *Probable Cause of Finding.* If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the magistrate shall forthwith hold him to answer in circuit court. Witnesses shall be examined and evidence introduced for the state under the rules of evidence prevailing in criminal trials generally except that hearsay evidence may be received, if there is a substantial basis for believing:

(1) That the source of the hearsay is credible;

(2) That there is a factual basis for the information furnished; and

(3) That it would impose an unreasonable burden on one of the parties or on a witness to require that the primary source of the evidence be produced at the hearing.

The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 12. On motion of either the state or the defendant, witnesses shall be sepa-

---

**3.** We recognized in *Desper v. State,* 173 W.Va. 494, 497, 318 S.E.2d 437, 440 (1984), however, that "when a preliminary examination is held, it is regarded as a 'critical stage' at which a defendant has a constitutional right to counsel."

rated and not permitted in the hearing room except when called to testify.

A preliminary hearing under Rule 5.1 is not a trial upon the issue of the defendant's guilt. *Desper v. State*, 173 W.Va. 494, 501, 318 S.E.2d 437, 445 (1984).[4] This Court discussed the primary function of a preliminary hearing in syllabus point 1 of *Desper*:

> A preliminary examination conducted pursuant to Rule 5.1 of the West Virginia Rules of Criminal Procedure serves to determine whether there is probable cause to believe that an offense has been committed and that the defendant committed it; the purpose of such an examination is not to provide the defendant with discovery of the nature of the State's case against the defendant, although discovery may be a by-product of the preliminary examination.

We also explained the scope of the defendant's rights in challenging probable cause under Rule 5.1 in syllabus point 2 of *Desper*:

> In challenging probable cause at a preliminary examination conducted pursuant to Rule 5.1 of the West Virginia Rules of Criminal Procedure, a defendant has a right to cross-examine witnesses for the State and to introduce evidence; the defendant is not entitled during the preliminary examination to explore testimony solely for discovery purposes. The magistrate at the preliminary examination has discretion to limit such testimony to the probable cause issue, and the magistrate may properly require the defendant to explain the relevance to probable cause of the testimony the defendant seeks to elicit.

■ While we recognized the magistrate's discretion, in *Desper*, to limit testimony to the probable cause issue and to require the defendant to explain the relevance of the testimony the defendant seeks to elicit to the probable cause issue, we did not fully discuss the discretion granted to a magistrate in determining the admissibility of hearsay evidence at the preliminary hearing. As cited above, *W.Va.R.Crim.P.* 5.1 allows the admissibility of hearsay evidence at a preliminary hearing provided three conditions are met: (1) the hearsay evidence must come from a credible witness; (2) there must be a factual basis for the information furnished; and (3) an unreasonable burden would be imposed on one of the parties or on a witness to require that the primary source of the evidence be produced at the hearing. *See State v. Haught*, 179 W.Va. 557, 371 S.E.2d 54 (1988).[5]

The hearsay evidence admitted at the preliminary hearing in this case to support the allegations of the minor children who did not testify consisted of the testimony of Lieutenant J.W. Hotsinpiller, the investigating officer, and Terry Givens, a child protective service worker for the West Virginia Department of Health and Human Services who interviewed the children.[6] To

---

4. In *Desper*, the defendant was charged with robbing a Go–Mart store clerk at knife point and taking approximately $87 from the store's cash register. The defendant sought a writ of mandamus from this Court to compel the State and the magistrate to grant him another preliminary hearing on the grounds that the magistrate had improperly denied the defendant's request to call police officers as witnesses. We held that the defendant should have been allowed to call the police officers at the preliminary hearing to challenge probable cause.

5. In syllabus point 2 of *State v. Haught*, relying in part on *W.Va.R.Crim.P.* 5.1, this Court held:
   > During a preliminary hearing held for the purpose of determining the question of probable cause for an arrest or search, a trial court is not required to disclose the identity of a confidential informant, provided that there is a substantial basis for believing that the informant is credible, that there is a factual basis for the information furnished and that it would impose an unreasonable burden on one of the parties or on a witness to require that the identity of the informant be disclosed at the hearing.

6. All four parents of the two children were called as adverse witnesses by counsel on behalf of Mr. Peyatt. They were cross-examined regarding the statements their children made to them and the questions they asked their children about the incidents. They were also questioned about their children's knowledge of sexual matters and were asked whether their children had any exposure to sexually explicit materials.

begin with, Lieutenant Hotsinpiller testified that he first interviewed the minor children at the request of Ms. Givens in response to an allegation filed with her office. Lieutenant Hotsinpiller testified that he asked each of the children to tell him what had occurred and where the incidents took place. He further testified that he had visited the residence where the incidents allegedly occurred prior to interviewing the children. Lieutenant Hotsinpiller stated that he conducted follow-up interviews with both children to check for any inconsistencies in their statements.

Lieutenant Hotsinpiller explained during cross-examination that he had used an audio tape recorder during both of the interviews with the children.[7] Lieutenant Hotsinpiller acknowledged on cross-examination that there were some inconsistencies in the statements regarding the time of year and the day the incidents occurred, but that the children never changed their statements of what had occurred.[8] Lieutenant Hotsinpiller also testified that he interviewed Mr. Peyatt, who denied the allegations and later submitted to a polygraph test. On redirect, Lieutenant Hotsinpiller stated that he believed that both children were telling him the truth about the incidents, and that neither one of them retracted any statement they had made.[9]

The next witness who testified at the preliminary hearing was Terry Givens. Ms. Givens also interviewed both of the children. She testified that she believed both children were telling her the truth and that she did not believe either of the children's statements were the result of any outside influence.[10]

On cross-examination, Ms. Givens testified that she had not talked with anyone, other than the children's counselor, as to whether the children's testimony was credible or influenced by an outside source. Ms. Givens was cross-examined about who was present during the interviews with the children, what questions she asked the children, and what the children's responses were to those questions.[11] Ms. Givens testified that she did not inquire as to the background of either of the children's families nor did she inquire as to what they may have been exposed to in their own home.

■ In reviewing this testimony in light of *W.Va.R.Crim.P.* 5.1, we must first consider whether the sources of the hearsay in this case are credible. Lieutenant Hotsinpiller tape recorded his interviews with the two children and conducted follow-up interviews to check for inconsistencies in the children's statements. Ms. Givens, as part of her duties as a child protective service worker, also interviewed the children and watched for inconsistencies in their statements. Both of these witnesses have worked with sexual abuse cases in the past, and they followed the same procedures in this case that they used in previous cases. They were cross-examined by Mr. Peyatt's counsel, gave details of their interviews with the children, and testified that they believed the children were telling the truth.

---

7. The magistrate did not allow the tape recorded interviews to be admitted into evidence.

8. Counsel on behalf of Mr. Peyatt read the statement of one of the children taken by Lieutenant Hotsinpiller into the record.

9. Lieutenant Hotsinpiller gave the following testimony regarding his belief that one of the children was telling the truth:

[T]he fact that she made this revelation to her mother and the, for lack of a better term, fallout involving her particular friendship with the Peyatt children has had, I'd say, a negative effect on her. I mean, she has probably lost two (2) of her better friends over this and I would say that that in itself would have, maybe, been motivation for her to have retracted her initial revelation, which hasn't been done.

10. When asked on direct examination whether she believed one of the children had somehow been influenced in making the allegations against Mr. Peyatt, Ms. Givens responded that the child "has been real concrete in her statements time after time and if there was any type of preparing her for anything, there would have been a slipup and there would have been something very noticeable that would have been very different in her statements."

11. Counsel on behalf of Mr. Peyatt subpoenaed Ms. Givens' notes for the preliminary hearing but, on motion by the State, the magistrate quashed the subpoenas.

There is nothing in the record which indicates that they are not credible sources.

Moreover, the witnesses had a factual basis for believing the statements the children made. First, the minor children in this case were close friends of Mr. Peyatt's children and were frequently in his home to play with them. The allegations they made against Mr. Peyatt jeopardized their close friendship with his children. Furthermore, the children were able to describe where in Mr. Peyatt's home the incidents allegedly took place and what he was wearing. Finally, Lieutenant Hotsinpiller and Ms. Givens had a factual basis for believing the children because the children's statements essentially remained consistent.

Finally, there was a substantial basis for the magistrate to believe that it would impose an unreasonable burden on the children to testify at the preliminary hearing because of their young age and the traumatic effect it would have on them to testify at that time.

While we recognize the circuit court's authority under article VIII, section 6 of the *West Virginia Constitution* and *W.Va. Code,* 53–1–2 [1933] to issue a writ of mandamus against a magistrate to compel him or her to perform a mandatory nondiscretionary duty or to compel the exercise of discretion where the magistrate fails to act, we do not believe the issuance of a writ of mandamus was appropriate in this case. We emphasize that this proceeding was a preliminary hearing to determine whether there was probable cause, and it was not a trial upon the issue of Mr. Peyatt's guilt. The magistrate had the discretion to allow the hearsay testimony at the preliminary hearing to be admitted under *W.Va. R.Crim.P.* 5.1 if the three conditions under the rule were met. It appears that the three conditions were met, and we do not believe the magistrate abused his discretion in this case by allowing the hearsay testimony. Thus, we conclude that the writ of mandamus compelling the magistrate to conduct another preliminary hearing should not have been granted by the circuit court.

Accordingly, we hold that the magistrate has the discretion to allow hearsay evidence at a preliminary hearing under *W.Va.R.Crim.P.* 5.1 if three conditions are met: (1) the source of the hearsay is credible; (2) there is a factual basis for the information furnished; and (3) an unreasonable burden would be imposed on one of the parties or on a witness to require that the primary source of the evidence be produced at the hearing.

### III

The State next asserts that the circuit court erred in issuing a writ of prohibition to prevent the prosecuting attorney from presenting this case to the grand jury before another preliminary hearing was conducted. The State contends that prohibition was not proper in this case because the prosecutor, in the performance of his executive duties, is not subject to the judicial writ of prohibition. Mr. Peyatt asserts that when the prosecutor appears before the grand jury he is performing his quasi-judicial duties and is therefore subject to a writ of prohibition.

The State relies, in part, upon *State ex rel. Miller v. Smith,* 168 W.Va. 745, 285 S.E.2d 500 (1981) in support of its argument. In *State ex rel. Miller v. Smith,* this Court recognized that "[p]rosecuting attorneys are executive officers, *see* W.Va. Const. art. VII, § 1; *Code* § 5–3–2 (1979 Replacement Vol.), § 7–4–1, and in the performance of their executive duties they are not subject to the judicial writ of prohibition." 168 W.Va. at 755–56, 285 S.E.2d at 506. We further stated, however, that actions on the part of the prosecuting attorney which constitute a usurpation of judicial power will be subject to a writ or prohibition.[12]

---

12. In *State ex rel. Miller v. Smith,* we found that the prosecuting attorney was attempting to influence the grand jury regarding the independent presentation of evidence by a private citizen. We held in syllabus point 3:

> A prosecuting attorney who attempts to influence a grand jury by means other than the presentation of evidence or the giving of court supervised instructions, exceeds his lawful jurisdiction and usurps the judicial power of

Although we recognized in *State ex rel. Miller v. Smith* that a prosecuting attorney performs a quasi-judicial function, we noted the distinction between the duties of a prosecuting attorney and those of a magistrate or circuit judge with respect to prohibition:

> [a] prosecuting attorney is an officer of the court, as are all lawyers, and, when representing the State at trial, or before a grand jury, he exercises a quasi-judicial function. There is a distinction to be made, however, between an officer of the court, such as a prosecuting attorney or a lawyer, and a judicial officer, such as a magistrate or circuit judge. *Only those individuals in the latter category are normally subject to a writ of prohibition.*

168 W.Va. at 755 n. 4, 285 S.E.2d at 506 n. 4 (emphasis added).

■ The duties of the prosecuting attorney are set forth, in pertinent part, in *W.Va.Code*, 7–4–1 [1971]: [13]

> It shall be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified, and *when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender*[.] [14]

(emphasis added)

This Court has consistently recognized that, under *W.Va.Code*, 7–4–1 [1971], the prosecutor has a nondiscretionary duty to institute proceedings against persons when he has information giving him probable cause to believe that any penal law has been violated. *State ex rel. Ginsberg v. Naum,* 173 W.Va. 510, 318 S.E.2d 454 (1984); *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409 (1984); *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624 (1981). "The only limitation upon the prosecutor's duty to bring criminal charges when information is received that any crime has been committed in his county is the requirement that the proceedings instituted and prosecuted be 'necessary and proper.'" *State ex rel. Hamstead v. Dostert,* 173 W.Va. at 138, 313 S.E.2d at 415 (1984).

In the present case, the prosecuting attorney and the magistrate both believed there was probable cause to submit the matter to the grand jury. By attempting to present this case to the grand jury, the prosecuting attorney was performing his statutory function. The prosecuting attorney was not acting in a quasi-judicial capacity nor did his actions constitute a usurpation of judicial power when he sought to present the matter to the grand jury. Nor does it appear that his actions in presenting the case to the grand jury were an abuse of his discretion. Thus, we find that the writ of prohibition should not have been issued by the circuit court. [15]

In summary, we hold that prohibition does not lie against a prosecuting attorney to restrain him from presenting a case to a grand jury where the prosecuting attorney, in performing his statutory duties, has

the circuit court and of the grand jury. Consequently, prohibition will lie to prevent such usurpation of judicial power.

13. We discussed prosecutorial discretion at length in *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 138–39, 313 S.E.2d 409, 415 (1984):

> When we speak of 'prosecutorial discretion,' we are speaking of what course of conduct is 'necessary and proper' given the circumstances in a particular case. With respect to the determination of whether to seek an indictment, the ultimate criterion must be whether, in the prosecutor's professional judgment, it appears from the evidence that there is probable cause to believe that an offense has been committed and that the defendant has committed it.

14. For a collection of cases from other jurisdictions discussing the availability of a writ of prohibition against the acts of a prosecuting attorney see Annotation, *Availability of Writ of Prohibition or Similar Remedy Against Acts of Public Prosecutor,* 16 A.L.R.4th 112 (1982).

15. Our holding in this case is consistent with other courts which have held that prohibition does not lie to restrain a prosecuting attorney from presenting a case to the grand jury where probable cause is found. *Almand v. Brock,* 227 Ga. 586, 182 S.E.2d 97 (1971); *Gould v. Parker,* 114 Vt. 186, 42 A.2d 416 (1945). *See* 63A Am. Jur.2d *Prohibition* § 32 (1984).

probable cause to believe that a criminal offense has been committed and that the defendant committed the offense.

## IV

For the reasons set forth herein, we conclude that the circuit court should not have issued a writ of mandamus against the magistrate, nor should it have issued a writ of prohibition against the prosecuting attorney. Therefore, we reverse and remand this case to the circuit court with directions to enter an order dissolving the writs.

Reversed and remanded.