UNITED STATES of America, Plaintiff-Appellee,

v.

Edward UDZIELA, Defendant-Appellant.

No. 80–2820.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1981.

Decided Feb. 11, 1982.*

Certiorari Denied June 21, 1982. See 102 S.Ct. 2964.

No judge favored a hearing *en banc* on the rule announced herein.

Richard F. Walsh, Chicago, Ill., for defendant-appellant.

Keith C. Syfert, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.**

BAUER, Circuit Judge.

Defendant-appellant Edward Udziela appeals from his conviction for conspiring to manufacture and distribute phencyclidine (PCP), in violation of 21 U.S.C. § 846, and for aiding and abetting in the manufacture of PCP, in violation of both 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Our jurisdiction is founded upon 28 U.S.C. § 1291. This appeal raises the important question whether perjured grand jury testimony, discovered and disclosed by the government after dismissal of the grand jury but before trial, should trigger an *in camera* judicial hearing to determine the existence and sufficiency of other evidence supporting the indictment. We hold that such a hearing is required in the future, unless the government chooses to seek a new indictment based on other, untainted evidence. Nevertheless, we affirm for the reasons expressed below.

## I

Bruce Nacker, Paul Udziela (Paul) and appellant Edward Udziela (appellant) played varying roles in a conspiracy to manufacture and distribute PCP, an illegal drug.[1] The scheme started in December 1979 when Paul approached Nacker, his Chicago neighbor for approximately four years, and discussed the profitability of selling PCP. After considering the matter, they decided to work together. Nacker, who was educated in biochemistry and pharmacy, obtained the formula and chemical components needed to produce a small

** The Honorable William J. Campbell, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Ramon Larson was also indicted and convicted for his part in the conspiracy. His activities, however, are not relevant to our discussion.

amount of PCP. He then prepared the first batch and delivered it to Paul, who eventually sold it for $1500 and divided the proceeds with Nacker.

Shortly before the first batch was completed, the two neighbors decided to expand their production to accommodate a buyer seeking large quantities of PCP. They called several drug companies and ordered additional chemicals necessary for increased drug production, sometimes giving fictitious names of individuals or businesses, or the names of friends' businesses, to shield the purchasers' true identities. Appellant was aware of these clandestine activities, having occasionally sat in on conversations between his brother Paul and Nacker.[2] Officials of one Chicago drug business, Lapine Scientific Company, became suspicious and contacted United States Drug Enforcement Administration (DEA) agents, who decided to monitor the activities of Nacker and Paul.

Although most of the companies' drug shipments were received by the conspirators, an order from Alfa Ventron Company in Massachusetts was inexplicably delayed. As a result, Nacker reordered the same quantity. Shortly thereafter, Nacker learned that his first Alfa Ventron Company order had been received, rendering the second unnecessary. Rather than cancel the second order, Nacker elected to obtain additional ingredients, which when mixed with his second order would yield double the initially anticipated amount of PCP.

Seeking additional chemicals, and unaware of DEA surveillance, appellant and his brother Paul drove to Precision Organic Chemical Company (Precision), a sham drug company operated by undercover DEA agents. Agent Mel Schabilion, posing as a Precision employee, greeted Paul, gave him a purchase order for three gallons of phenyl magnesium bromide, and then carried the chemical containers outside to appellant's car, where appellant was waiting. There Schabilion met appellant, exchanged pleasantries with him, loaded the three bottles of chemicals into appellant's car, and watched appellant and his brother depart.

Appellant then drove Paul from Precision to Nacker's garage, where the PCP was produced, and dropped off his brother and the chemicals. Later that day, appellant also drove his brother and Nacker to a store to buy a fish tank in which to mix the chemicals. In addition, appellant acted as a lookout during production and drove to a local store to purchase ice needed in the manufacturing process. That evening, agents searched Nacker's garage and seized drug containers and equipment. Nacker, Paul, and appellant were subsequently arrested.

Nacker ultimately appeared before the grand jury, where he attempted to minimize his role in the drug manufacturing conspiracy. He claimed that: (1) he never previously manufactured PCP; (2) he learned the PCP formula from Paul; (3) he only ordered chemicals twice; and (4) he and Paul were the only persons involved. He also admitted that he lied to federal agents about his role in the conspiracy, but claimed to be telling the true story to the grand jury because he was under oath.

The day before trial, after the grand jury was no longer sitting, Nacker revealed that he had lied to the grand jury. The government, taken by surprise, immediately disclosed this new information to appellant's counsel. The case proceeded to trial, and on direct examination, Nacker told a story greatly different from his grand jury version, directly implicating appellant in many respects. After three days at trial, appellant moved to dismiss the indictment because he claimed it was based, at least in part, on Nacker's perjured testimony. The motion was denied and appellant was eventually convicted. This appeal followed.

II

Appellant's sole contention on appeal is that the trial court erred in not dismissing his indictment. Although Nacker's perjury was not discovered until after the grand

---

**2.** Appellant and Paul lived together in a basement apartment where some of the conversations occurred.

jury was dismissed, appellant argues that the government was obligated to seek dismissal of the flawed indictment and then, if it chose, attempt to secure a new indictment. The government, on the other hand, contends that dismissal is warranted only if the perjured testimony was introduced knowingly, which it claims was not the case. As authority for their positions in this case of first impression in this Circuit, both sides rely heavily on their respective interpretations of *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974).

### A

Before discussing *Basurto*, the problem raised in this appeal should be placed in perspective. Under the ancient English system, where criminal prosecutions were instituted by the King at the suit of private prosecutors, "the most valuable function of the grand jury was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will." *Hale v. Henkel*, 201 U.S. 43, 59, 26 S.Ct. 370, 372, 50 L.Ed. 652 (1906). *Accord, Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962); *Ex parte Bain*, 121 U.S. 1, 11, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887); Kaufman, *The Grand Jury—Its Role and Its Powers*, 17 F.R.D. 331, 335 (1955). In drawing this nation's charter, the drafters of the United States Constitution elevated the grand jury to constitutional status, embodied in the fifth amendment command that no federal prosecution shall occur "unless on a presentment or indictment of a Grand Jury." Indeed, the framers thought the grand jury essential to preserve our basic liberties. *See United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); Note, *The Grand Jury as an Investigative Body*, 74 Harv.L.Rev. 590, 591 (1961). Thus, "the grand jury performs the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *In re Walsh*, 623 F.2d 489, 492 (7th Cir. 1980), *quoting Branz-*

*burg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). *See also United States v. Zarattini*, 552 F.2d 753, 756 (7th Cir. 1977), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1978).

Despite its lofty place as an instrument of justice, *see Branzburg v. Hayes*, 408 U.S. at 687, 92 S.Ct. at 2659; *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), as a practical matter the modern grand jury is greatly dependent on the United States Attorney "to present to it such evidence as it needs for its performance of its function and to furnish it with controlling legal principles." *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979). *See also* 8 J. Moore, *Federal Practice* ¶ 6.02[1] (2d ed. 1981). Recognizing this increasing dependency, federal courts in recent years have become more sensitive to allegations of governmental misconduct before the grand jury and have demonstrated greater willingness to curb prosecutorial abuse of such proceedings. *See generally* Holderman, *Preindictment Prosecutorial Conduct in the Federal System*, 71 J.Crim.L. & C. 1, 16–19 (1980). Thus, in cases where over-zealous prosecutors have manipulated a grand jury by willfully misleading it or knowingly presenting false evidence, courts have not hesitated to exercise their power to dismiss indictments. *See, e.g., United States v. Samango*, 607 F.2d 877 (9th Cir. 1979) (intentional suppression of favorable testimony); *United States v. McKenzie*, 524 F.Supp. 186 (E.D. La.1981) (prosecutors placed undue pressure on the grand jury to indict policeman accused of murder and brutality); *United States v. Martin*, 480 F.Supp. 880 (S.D.Tex. 1979) (failure to reveal both SEC agreement not to prosecute and alleged bribery scheme); *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979) (failure to divulge exculpatory evidence and other misconduct); *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610 (N.D.Okla.1977) (withholding of exculpatory testimony); *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579 (W.D.Tex.1977) (failure to present complete record of prior grand jury proceeding as well as statutory provision exempting

airlines from antitrust laws); *United States v. DeMarco*, 401 F.Supp. 505 (C.D.Cal.1975), *aff'd on other grounds*, 550 F.2d 1224 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977) (failure to disclose information vital to the grand jury's informed and independent judgment); *United States v. Gallo*, 394 F.Supp. 310 (D.Conn. 1975) (selective presentation of evidence from a prior grand jury proceeding); *United States v. Wells*, 163 F. 313 (D.Idaho 1908) (prosecutor expressed his opinion that defendants were guilty and that the grand jury should return an indictment against them); *cf. Johnson v. Superior Court*, 15 Cal.3d 248, 539 P.2d 792, 124 Cal. Rptr. 32 (1975) (California Penal Code imposes on prosecutor an implied duty to divulge exculpatory information).

Without necessarily endorsing these cases, we note that they generally involved fairly serious or blatant prosecutorial misconduct. The dismissals in those decisions, whether based on constitutional grounds or the federal courts' supervisory powers, reflected the courts' fundamental concern for protecting the integrity of the judicial process, "particularly the function of the grand jury, from unfair or improper prosecutorial conduct." *United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). In certain situations, we have shown similar willingness to exercise our supervisory power when the integrity of the judicial system was threatened or undermined by executive misconduct. *See, e.g., United States v. Cortina*, 630 F.2d 1207 (7th Cir. 1980); *United States v. Poole*, 379 F.2d 645 (7th Cir. 1967).

On the other hand, as we observed in *Cortina*, the federal supervisory power does not give "the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it does [not] approve." 630 F.2d at 1214, *quoting United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973). Strictly speaking, the grand jury is a constitutional fixture in its own right, belonging to neither the executive nor the judicial branch, *see United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981); *United States v. Chanen*, 549 F.2d 1306, 1312–13 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); *Nixon v. Sirica*, 487 F.2d 700, 712 n.54 (D.C.Cir.1973); *In re April 1956 Term Grand Jury*, 239 F.2d 263, 268–69 (7th Cir. 1956), though it often relies on both when performing its duties. In light of the subtle yet distinct relationships among these three constitutionally authorized entities, we must take care not to encroach on legitimate executive activities before the grand jury. *See United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979); *United States v. McKenzie*, 524 F.Supp. 186, 189 (E.D.La.1981); *United States v. Martin*, 480 F.Supp. 880, 885–86 (S.D.Tex.1979). It is with good reason, then, as Justice (then Judge) Blackmun put it, that "courts generally have been *most cautious* in invalidating indictments for alleged grand jury misconduct of the prosecutor." *Beatrice Foods Co. v. United States*, 312 F.2d 29, 39 (8th Cir. 1963) (emphasis added).

### B

With these thoughts in mind, we turn to the Ninth Circuit's decision in *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). In that case Ernest Basurto was charged with conspiracy to import and distribute marijuana. Prior to the commencement of Basurto's trial, the government's key witness, William Barron, informed the prosecution that all his grand jury testimony concerning Basurto's conspiratorial activities was perjured. *Id.* at 784. The prosecutor informed Basurto's counsel of Barron's perjury, but failed to notify the court or the grand jury. At the trial's conclusion, Basurto was convicted on the conspiracy charge.

On appeal, a panel of the Ninth Circuit reversed Basurto's conviction, holding that

the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to

immediately inform the court and opposing counsel—and if the perjury be material, also the grand jury—in order that appropriate action may be taken.

*Id.* at 785–86. Noting that the use of false testimony to obtain tainted convictions goes against "any concept of ordered liberty," *id.* at 786, *citing Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), the *Basurto* majority concluded, on constitutional grounds, that reversal of a conviction is required

> when the government allows a defendant to stand trial on an indictment which it knows to be based in part upon perjured testimony. The consequences to the defendant of perjured testimony given before the grand jury are no less severe than those of perjured testimony given at trial, and in fact may be more severe. The defendant has no effective means of cross-examining or rebutting perjured testimony given before the grand jury, as he might in court.

497 F.2d at 781.

Judge Hufstedler, in a specially concurring opinion, agreed that the prosecutor's failure to disclose perjury undermined the grand jury's independence. She noted, however, that such a prosecutorial failure might not always amount to a violation of the defendant's constitutional rights. To remedy this shortcoming, she preferred to base the decision on the court's supervisory jurisdiction, under which the court could require the United States Attorney to move for dismissal of the tainted indictment independent of any constitutional challenge by a defendant. *Id.* at 794.

Although a few subsequent decisions have followed *Basurto, see, e.g., United States v. Ciambrone,* 601 F.2d 616 (2d Cir. 1979); *United States v. Smith,* 552 F.2d 257 (8th Cir. 1977); *United States v. Guillette,* 547 F.2d 743 (2d Cir. 1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Goldman,* 451 F.Supp. 518 (S.D.N.Y.), *aff'd,* 573 F.2d 1297 (2d Cir. 1978); *United States v. Gallo,* 394 F.Supp. 310 (D.Conn.1975), more recent opinions have "not only cut back on the reach of *Basurto,* but [have] also questioned

its continuing validity." *United States v. Cathey,* 591 F.2d 268, 271–72 (5th Cir. 1979), *citing United States v. Bracy,* 566 F.2d 649 (9th Cir. 1977), *stay of enforcement denied,* 435 U.S. 1301, 98 S.Ct. 1171, 55 L.Ed.2d 489, *cert. denied,* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978). *Accord, Talamante v. Romero,* 620 F.2d 784, 790 n.7 (10th Cir.), *cert. denied,* 449 U.S. 877, 101 S.Ct. 223, 66 L.Ed.2d 99 (1980). Indeed, a panel of the Ninth Circuit itself noted that prosecutorial misconduct must be "flagrant" to violate due process, a rather strict application of *Basurto,* if not an entirely new standard. *See United States v. Bettencourt,* 614 F.2d 214, 216 (9th Cir. 1980), *citing United States v. Vargas-Rios,* 607 F.2d 831 (9th Cir. 1979), and *United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). *See also United States v. Cederquist,* 641 F.2d 1347, 1352–53 (9th Cir. 1981); *United States v. Thompson,* 576 F.2d 784, 786 (9th Cir. 1978); *United States v. Brown,* 562 F.2d 1144, 1149 n.3 (9th Cir. 1977); 8 J. Moore, Federal Practice, ¶ 6.04[2] (2d ed. 1981).

We also doubt the total validity of *Basurto* and, therefore, decline to follow its broad holding. The *Basurto* rationale suffers from a major flaw. It suggests that the "consequences to the defendant of perjured testimony given before the grand jury are no less severe than those of perjured testimony given at trial, and in fact may be more severe" because a defendant has no opportunity to cross-examine a grand jury witness. 497 F.2d at 786. The *Basurto* court then cites several decisions involving perjury *at trial* as support for its position. *Id.* This view misapprehends the limited function of the grand jury. Under the fifth amendment all that is required of an indictment is that it be "returned by a legally constituted and unbiased grand jury." *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). The grand jury "does not sit to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, so as to require him to stand trial." *Bracy v. United States,* 435 U.S. 1301, 1302, 98

S.Ct. 1171, 1172, 55 L.Ed.2d 489 (1978) (Rehnquist, J., in chambers). *Accord, Hannah v. Larche,* 363 U.S. 420, 499, 80 S.Ct. 1502, 1548, 4 L.Ed.2d 1307 (1960) ("The grand jury merely investigates and reports. It does not try.").

The effect of *Basurto,* to borrow the Supreme Court's language in *Costello,* "would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Costello v. United States,* 350 U.S. at 363, 76 S.Ct. at 408. The resulting delay from endless challenges would be unacceptable, especially in cases where the prosecution was unaware of or merely negligent in allowing perjured grand jury testimony and where the perjury constituted but a small portion of the evidence before the grand jury.

We think a more appropriate standard must be sensitive to the grand jury's independence yet strong enough to guard against outrageous or intentional prosecutorial misconduct.[3] In this case, however, no prosecutorial misconduct confronts us. The government was completely unaware of Nacker's perjured grand jury testimony and, upon discovering it, immediately informed defense counsel.

■ In light of the narrow issue this case presents, we exercise our supervisory power and hold, prospectively, that where perjured testimony supporting an indictment is discovered before trial the government has the option of either voluntarily withdrawing the tainted indictment and seeking a new one before the grand jury when it reconvenes, unless it is already sitting, or of appearing with defense counsel before the district court for an *in camera* inspection of the grand jury transcripts for a determination whether other, sufficient evidence exists to support the indictment. If other, sufficient evidence is present so that the grand jury may have indicted without giving any weight to the perjured testimony, the indictment cannot be challenged on the basis of the perjury. *See United States v. DeLeo,* 422 F.2d 487, 496–97 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *Coppedge v. United States,* 311 F.2d 128, 131–32 (D.C.Cir.) (Burger, J.), *vacated and remanded on other grounds,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), *cert. denied,* 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963); *Way v. United States,* 285 F.2d 253, 254 (10th Cir. 1960). Our rationale for these rules is simple enough: errors before the grand jury, such as perjured testimony, normally can be corrected at trial, where evidentiary and procedural rules safeguard the accused's constitutional rights. *See Loraine v. United States,* 396 F.2d 335, 339 (9th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968); *Coppedge v. United States,* 311 F.2d at 131; *but see United States v. Serubo,* 604 F.2d 807, 817 (3d Cir. 1979) (while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo). Put differently, grand jury proceedings need not be perfect.

■ After thoroughly reviewing the grand jury transcript in this case, we are convinced that ample evidence apart from Nacker's perjured testimony supported the indictment. For example, DEA Agent Lance Mrock told the grand jury of his firsthand observation of the transaction between Paul Udziela and Agent Schabilion at Precision Organic Chemical Company. Agent Mrock specifically noted appellant's presence at Precision, just as Agent Schabilion did at trial. Agent Mrock also noted that appellant and Paul proceeded directly to Nacker's garage, that appellant met with Nacker and Paul outside the garage, and that appellant unloaded the chemicals and

---

**3.** We approach with care the delicate balance between grand jury independence and aggressive prosecution because, as one commentator aptly noted, "[g]iven the *Costello* ruling, a court that dismisses a validly returned indictment is more guilty of interfering with the independence of the grand jury than a prosecutor who presents a slanted case to the grand jury." Note, *Grand Jury: A Prosecutor Need Not Present Exculpatory Evidence,* 38 Wash. & Lee L.Rev. 110, 117 (1981).

then remained in the garage for a few minutes. Gr. Jury Tr., Aug. 29, 1980, at 8–11. Based on Mrock's testimony, the grand jury could see that appellant knowingly participated in a drug manufacturing conspiracy. Thus, regardless of Nacker's testimony, the grand jury was justified in determining that probable cause existed to indict appellant. Our independent review obviates the need for a hearing before the district court in this case. Because other, sufficient evidence was presented to the grand jury, appellant's motion to dismiss the indictment was properly denied.

### III

Because of our disposition of this case, we need not address the government's other arguments in support of appellant's convictions. The decision of the district court is therefore

Affirmed.