371 S.E.2d 74

**STATE ex rel. Richard Allen MOORE**

v.

**Larry CONRAD, Sheriff and Jailor of Clay County, West Virginia.**

**No. CC978.**

Supreme Court of Appeals of West Virginia.

June 30, 1988.

Clinton W. Smith, Charleston, for appellee.

Joseph R. Martin, Asst. Pros. Atty., Clay, for appellant.

BROTHERTON, Justice:

This case is before us on two certified questions from the Circuit Court of Clay County regarding proceedings held pursuant to the execution of a governor's extradition warrant.

Richard Allen Moore was arrested on November 19, 1985, upon a fugitive from justice warrant issued by a Clay County magistrate. The warrant charged that between October 1, 1982 and January 1, 1983 Moore committed sexual battery, a capital offense, in Pasco County, Florida.[1] On December 20, 1985, Moore was committed for an additional sixty days to allow the State of Florida time to obtain a governor's warrant for extradition.

On February 21, 1986, ninety-four days after the original arrest, Moore was arrested pursuant to the governor's warrant of extradition. On that day the Circuit Court of Clay County directed Moore to make application for a writ of habeas corpus within thirty days and scheduled a hearing on the matter for March 21, 1986. *See* W.Va.Code § 5–1–9 (1987). At the conclusion of that hearing, the Circuit Court of Clay County concluded that Moore was entitled to release from custody because,

1. The supporting documents accompanying the warrant indicated that the alleged crime was committed between October 1, 1982 and January 31, 1983.

based on the evidence presented, he "was not within the demanding State at the time of the alleged offense."[2]

On July 13, 1987, the Governor of West Virginia again issued an extradition warrant upon the requisition of the Governor of Florida for the arrest of Moore. The warrant alleged the same offense and times as alleged in the first governor's warrant issued in February, 1986. On August 15, 1987, Moore was arrested upon the July 13, 1987 warrant. Following his arrest, Moore filed a petition for a writ of habeas corpus in the Circuit Court of Clay County. At a hearing on the petition, the circuit court found the following questions to be controlling and certified them to this Court:

1. Is service of a governor's warrant for extradition within the period allowed by statute a jurisdictional prerequisite for the conducting of a valid hearing on a petition for writ of habeas corpus?

2. Is the conducting of a hearing upon a petition for writ of habeas corpus resulting in a finding that the alleged defendant was not in the demanding State at the time alleged for the offense res judicata as to any later governor's warrants for extradition arising from the same acts and allegations?

## I.

█ We consider first whether the March 21, 1986 hearing on Moore's petition for writ of habeas corpus was invalid because the governor's extradition warrant was executed ninety-four days after Moore's arrest under the fugitive warrant. Under this Court's holding in *Brightman v. Withrow*, 172 W.Va. 235, 304 S.E.2d 688 (1983), we answer in the negative. In syllabus point 1 of *Brightman* this Court concluded:

Under the provisions of W.Va.Code, 5–1–9, a fugitive incarcerated under a fugitive warrant in this State is entitled to release from custody after ninety days unless the Governor's extradition warrant has been issued and executed. However, upon his release such person remains a fugitive subject to rearrest on the Governor's warrant if he remains within this State.

Accordingly, Moore was subject to release at the end of the ninety day period. However, as long as Moore remained within the State of West Virginia, his re-arrest pursuant to the governor's extradition warrant was proper.

## II.

At the March 21, 1986 habeas corpus hearing four witnesses testified that Moore was in Clay County, West Virginia, between October 1982 and January 1983. The State offered only the affidavit of Denise Scholtz, a detective for the Pasco County Sheriff's Office in which she stated that during the course of the investigation it was confirmed that Moore had resided in Pasco County, Florida, during the period of October 1982 through January 1983. R. at 40. Based on the evidence presented the circuit court concluded that Moore was not in Florida during the relevant time period and ordered that he be released from custody.

The question presented for our consideration is whether the circuit court's determination at the March 21, 1986 hearing that Moore was not in the demanding state at the time of the alleged offense bars subsequent extradition proceedings arising from the same allegations.

Courts which have considered the issue have reached different results. For example, in *Wells v. Sheriff, Carter County*, 442 P.2d 535 (Okla.Crim.App.1968), the Court of Criminal Appeals of Oklahoma considered whether a habeas corpus proceeding which resulted in a finding that a prisoner was not present in the demanding state on the date the alleged crime was committed barred a subsequent extradition proceeding. The court began by recogniz-

---

**2.** Whether an individual sought under a governor's extradition warrant was present in the demanding state at the time the alleged offense was committed is a proper matter for consideration in a habeas corpus proceeding challenging extradition. *State ex rel. Jones v. Warmuth*, 165 W.Va. 825, 272 S.E.2d 446 (1980).

ing the general rule that "the doctrine of res judicata does not apply if in the subsequent proceedings it is shown that a different state of facts or conditions exists." *Wells*, 442 P.2d at 538 (quoting 39 C.J.S. Habeas Corpus § 104). The Oklahoma court observed that in the earlier habeas corpus proceeding the district court had concluded that the accused was not present in the demanding state on the date the crime allegedly took place and that that date remained the same. The court therefore concluded that no different state of facts or conditions existed to warrant restraint of the accused and held that res judicata operated to bar the subsequent extradition proceeding. *Id.* at 538–41.[3]

In *In re Russell*, 12 Cal.3d 229, 524 P.2d 1295, 115 Cal.Rptr. 511 (1974), however, the Supreme Court of California concluded that the discharge of an accused on the ground that he was not present in the demanding state at the time of the alleged offense did not bar a subsequent extradition proceeding. The court noted first that "extradition is not a matter of mere comity, but an absolute right of the demanding state and duty of the asylum state under the federal constitution." 524 P.2d at 1298 (footnote omitted). *See* U.S. Const. art. IV, § 2, cl. 2.[4]

Secondly, the California court emphasized that extradition, like the seeking of a complaint or indictment, is a preliminary step in the criminal process. 524 P.2d at 1298, 115 Cal.Rptr. at 514. The court then explained that since double jeopardy does not attach at a preliminary hearing, dismissal of a complaint does not preclude either refiling before another magistrate or seeking an indictment on the same charges. *Id.* at 1297, 115 Cal.Rptr. at 513. Concluding

that the same reasoning should apply to extradition proceedings, the court in *Russell* held that "issuance of a writ of habeas corpus in a previous extradition proceeding no more bars a second such proceeding than dismissal of a complaint by one magistrate bars refiling of the complaint before another magistrate or seeking an indictment." *Id.* at 1298, 115 Cal.Rptr. at 514.

 We find the reasoning of the *Russell* court persuasive. We agree that res judicata should bar subsequent extradition proceedings where no new facts or conditions are presented. However, where a criminal prosecution is halted due to lack of evidence showing presence in the demanding state, res judicata should not operate to bar a subsequent extradition proceeding if at some later date the demanding state can produce such evidence. We, therefore, conclude that a determination in a habeas corpus proceeding that an accused, in custody pursuant to a governor's extradition warrant was not in the demanding state when the alleged offense was committed does not bar a subsequent extradition proceeding on the same charges where new or additional evidence is presented as to the accused's whereabouts.

This action is remanded to the Circuit Court of Clay County for disposition in accordance with this opinion.

Certified question answered; case remanded for disposition.

3. The court, however, added that its decision did not preclude extradition. The court stated that the demanding state could return to the district court to correct an alleged erroneous judgment by nunc pro tunc entry. The court explained that extradition could be accomplished in this manner "by filing application in the nature of coram nobis, and at the hearing thereon provide sufficient proof to warrant that court to correct its own 'erroneous' judgment, if such be erroneous." *Wells*, 442 P.2d at 541. *Cf. Ex parte Messina*, 233 Mo.App. 1234, 128 S.W.2d 1082 (1939).

4. Article IV, section 2, clause 2 of the United States Constitutional provides:

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.