383 S.E.2d 844

**STATE ex rel. Paul E. PINSON,
Special Prosecuting Attorney
of Mingo County**

v.

**The Honorable Elliott E. MAYNARD,
Judge of the Circuit Court of
Mingo County.**

No. 18842.

Supreme Court of Appeals of
West Virginia.

July 24, 1989.

Charles G. Brown, Atty. Gen., Stephen D. Herndon, Sol. Gen., Charleston, for appellant.

Paul E. Pinson, Pros. Atty., Williamson, for Maynard.

Michael Thornsbury, Larry Thompson, Thournsbury & Associates, Williamson, for Gertrude Elaine Montgomery.

WORKMAN, Justice:

In this original proceeding, the relator, the State of West Virginia, seeks a writ of mandamus to compel the respondent, Elliott E. Maynard, Judge of the Circuit Court of Mingo County, to vacate that portion of his order requiring dismissal of a six-count embezzlement indictment *with prejudice.* This Court issued a rule to show cause why this relief should not be granted on November 30, 1988.[1] The circuit court found: (1) that testimony before the grand jury by a State witness was intentionally false and misleading, amounting to a denial of due process under the Fifth and Fourteenth Amendments, and (2) that jeopardy had attached to the defendant, thus requiring dismissal of criminal charges with prejudice. We find that the circuit court erred, and direct that it vacate that portion of its order dismissing the indictment *with prejudice.*

In September 1987, the grand jury indicted Gertrude Montgomery on six (6) counts of embezzling money from her father-in-law's supermarket. Two witnesses testified before the grand jury, the market's full-time bookkeeper and the state trooper who conducted the investigation. Testimony revealed the defendant was the bookkeeper for the market on weekends. On each of the six dates the defendant kept

---

1. This Court granted the defendant below's motion to intervene, and the intervenor filed a brief in opposition to the State's position on February 6, 1989.

the books, the ledgers failed to reflect all the cash receipts. The full-time bookkeeper noted these discrepancies and testified that all the erroneous entries found in the books were made in the defendant's handwriting. The ledgers reflected a total cash deficit of eleven thousand dollars.

The state trooper testified that his investigation into the alleged embezzlement revealed how the ledgers were completed and the cash register receipts altered to hide the theft. He stated the defendant had computed the daily receipts each time the amount of cash on hand and the amount received did not match. Near the conclusion of the trooper's testimony this exchange took place:

> Special Prosecutor: Does anybody have any questions of Trooper Pope?
>
> Grand Juror: Did you take a statement from her?
>
> Answer: (The witness continuing.) No.
>
> Grand Juror: Are the records in that book handwritten?
>
> Answer: (The witness continuing.) Yes.
>
> Grand Juror: Has there been a comparison of her handwriting with the book?
>
> Answer: (The witness continuing.) No, ma'am, there hasn't been. *We had a preliminary hearing on this and she didn't deny filling out the ledger.* (emphasis added).

The defendant, however, did not testify in her own behalf at the preliminary hearing, as the trooper's grand jury testimony suggested.

Additionally, it should be noted that the special prosecutor did present to the grand jury the potentially exculpatory evidence that the defendant was in the process of divorcing her husband, the store owner's son.

After a review of the grand jury transcript, the defendant moved for dismissal of the charges with prejudice. At the dismissal hearing, the special prosecutor represented that he had neither attended the preliminary hearing nor seen a transcript

of it, and thus was not aware at the time of the trooper's testimony that it was misleading. According to the State's brief, the circuit court made no finding of prosecutorial misconduct and in fact orally advised the special prosecutor, on the record, that the dismissal was not his fault. However, the court below found the state trooper intentionally misled the grand jury with his testimony concerning the defendant's failure to deny the ledger entries,[2] and determined that such false and misleading testimony constituted "a denial of due process under the Fifth and Fourteenth Amendments." Final Judgment Order at 3. The Court further found the "contrivance by the State to procure the conviction and imprisonment of the Defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation." *Id.* (citing *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Barbee v. Warden, Md. Penitentiary,* 331 F.2d 842 (4th Cir.1964)). The circuit court further found that jeopardy had attached to the defendant, and dismissed the charges with prejudice.

The issues presented to this Court are twofold: (1) whether jeopardy had attached to the defendant, thus necessitating the dismissal with prejudice; and, (2) if not, whether Trooper Pope's testimony otherwise warranted dismissal of the indictment *with prejudice.* The Court finds jeopardy had not attached, and that the trooper's testimony does not warrant dismissal *with prejudice.*

## I. JEOPARDY ISSUE

■ It is well-settled law in West Virginia that jeopardy does not attach until a defendant "has been placed on trial on a valid indictment, before a court of competent jurisdiction, has been arraigned, has pleaded and a jury has been impaneled and sworn." *Brooks v. Boles,* 151 W.Va. 576, 153 S.E.2d 526, 530 (1967). The Court has

---

**2.** The trooper was not present to testify at the dismissal hearing, so the finding of intentional

fraud was inferred by Judge Maynard.

reiterated this holding in subsequent cases.[3]

■ Application of the Court's holding in *Brooks* and its progeny makes it impossible to find jeopardy attached to the defendant in the instant case. Here the defendant had not been arraigned, had not pled, had not been placed on trial, and a jury had not been impaneled or sworn. Here the defendant had been indicted, various motions had been filed, and a preliminary hearing held.[4] Since jeopardy had not attached, dismissal with prejudice on the grounds of double jeopardy was not warranted.

## II. MISLEADING TESTIMONY

The next issue to be examined is whether the trooper's misleading testimony required the grand jury's indictment to be dismissed *with prejudice.* A brief review of the grand jury's history, purpose, and function provides a backdrop for this examination.

"The institution of the grand jury is deeply rooted in Anglo–American history."[5] *United States v. Calandra,* 414 U.S. 338, 342, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). For centuries in England the grand jury served both as an accuser of people suspected of criminal wrongdoing and a protector of citizens from arbitrary governmental action. *Id.* at 342–43, 94 S.Ct. at 617 (citing *Costello,* 350 U.S. at 361–62, 76 S.Ct. at 407–08). The grand jury continues this dual role to the present day, balancing the determination of probable cause that an offense has been committed against the duty to protect innocent

citizens from unfounded criminal prosecution. *In re Disclosure of Grand Jury Material,* 645 F.Supp. 76, 78 n. 7 (N.D.W.Va.1986); *see also Branzburg,* 408 U.S. at 686–87, 92 S.Ct. at 2659–60. Historically, the grand jury has been the sword of the government as well as the shield of the people, and this Court has on many occasions emphasized the importance of preserving this duality.[6] *Miller,* 168 W.Va. at 751, 285 S.E.2d at 504. For the indictments of a grand jury to be valid, the Fifth Amendment of the *United States Constitution* requires they be "returned by a legally constituted and unbiased grand jury."[7] *Costello,* 350 U.S. at 363, 76 S.Ct. at 409.

■ Criminal defendants have frequently sought to challenge the validity of grand jury indictments on the ground that they are not supported by adequate or competent evidence. *Id.* at 363–364, 76 S.Ct. at 408–409; *Costello,* 350 U.S. at 363–64, 76 S.Ct. at 408–09; *Barker v. Fox,* 160 W.Va. 749, 238 S.E.2d 235 (1977). This contention, however, often runs counter to the function of the grand jury, which is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial. *Bracy v. United States,* 435 U.S. 1301, 1302, 98 S.Ct. 1171, 1172, 55 L.Ed.2d 489 (1978).

■ In *Barker,* a criminal defendant sought to challenge the validity of a grand jury indictment on the basis that it was based on hearsay testimony. This Court reiterated the well-settled rule that "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go

---

3. *See also Porter v. Ferguson,* 174 W.Va. 253, 324 S.E.2d 397, 399 (1984); *Myers v. Frazier,* 173 W.Va. 658, 319 S.E.2d 782, 795–798 (1984); *Manning v. Inge,* 169 W.Va. 430, 288 S.E.2d 178, 183 (1982); *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659, 675 (1980); *Adkins v. Leverette,* 164 W.Va. 377, 264 S.E.2d 154, 156 (1980); *Accord State ex rel. Moore v. Conrad,* 179 W.Va. 577, 371 S.E.2d 74, 76 (1988); *State v. Cain,* 169 W.Va. 772, 289 S.E.2d 488, 490 (1982).

4. *See Moore,* 179 W.Va. at 579, 371 S.E.2d at 76.

5. For detailed discussion of the history and role of the grand jury, see *Costello v. United States,* 350 U.S. 359, 361–362, 76 S.Ct. 406, 407–408, 100

L.Ed. 397 (1956); *State ex rel. Miller v. Smith,* 168 W.Va. 745, 285 S.E.2d 500, 502–04 (1981). *See also Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659–60, 33 L.Ed.2d 626 (1972).

6. One way West Virginia maintains this duality is to "strictly circumscrib[e]" the prosecuting attorney's role. His jurisdiction encompasses only the presentation of evidence. *Miller,* 168 W.Va. at 757, 285 S.E.2d at 506–507.

7. *See also Pierre v. La.,* 306 U.S. 354, 362, 59 S.Ct. 536, 540, 83 L.Ed. 757 (1939) (discusses effects of racial discrimination in grand jury selection).

behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." *Barker*, 160 W.Va. at 749, 238 S.E.2d at 235.

The *Barker* Court cited *Noll v. Dailey*, 72 W.Va. 520, 79 S.E. 668, 669 (1913) for the proposition that the grand jury is "the tribunal representing the people, for the purpose of charging crime and designating the criminal." The *Noll* Court noted that if the evidence that satisfied the grand jury that probable cause exists for the prosecution of a defendant was not sufficient to satisfy a court or a petit jury, the defendant could be vindicated by an acquittal at trial. *Id.; see also Barker*, 160 W.Va. at 752, 238 S.E.2d at 237. The *Barker* court went on to say that if a defendant demonstrated a *prima facie* case of willful, intentional fraud he would be entitled to "a full hearing" examining the indictment.[8] *Barker*, 160 W.Va. at 753, 238 S.E.2d at 237. Absent a showing of fraud, an examination of the evidence presented to the grand jury would not be in the interests of the efficient administration of justice nor the maintenance of the integrity of the grand jury system. *Id.* 160 W.Va. 751–52, 238 S.E.2d at 236–37.

The recent case of *Perolis v. McCarty*, No. 18678 (W.Va. filed Nov. 21, 1988), discusses briefly the necessity of establishing a *prima facie* case of intentional fraud before the court can look behind an indictment. *See also Whitman*, 160 W.Va. at 649–50, 236 S.E.2d at 574–75. In *Perolis* a state trooper was alleged to have intentionally misled the grand jury by not reporting fully and accurately the results of the victim's polygraph test. This Court determined the circuit court's finding of insufficient evidence to support a *prima facie* case of intentional fraud was not clearly erroneous.[9]

The question before this Court is whether the defendant made a *prima facie* case that such fraud occurred before this grand jury. It is clear that if fraud did occur, it did not emanate from the State because the circuit court found no prosecutorial misconduct. The testimony in the instant case is similar to *Perolis* in that, while misleading, there appears to be no *prima facie* showing of "willful, intentional fraud." Consequently, it appears the circuit court may have erred in making such a finding and dismissing the indictment at all.[10]

However, the record before us is incomplete; various proceedings, including the dismissal hearing, are not in the record. Furthermore, the state does not object to the dismissal but merely the dismissal *with prejudice*. Therefore, for the sake of this discussion, we will assume the circuit court was correct in its finding of a *prima facie* case of willful, intentional fraud.

The next issue then is whether due process required the circuit court to dismiss the indictment *with prejudice* based on the finding of intentional fraud on the part of a witness.[11]

---

**8.** *See State ex rel. Whitman v. Fox*, 160 W.Va. 633, 236 S.E.2d 565, 574–575 (1977) (discusses necessity for making a *prima facie* case in a related grand jury context).

**9.** The indictment in *Perolis* was dismissed without prejudice on other grounds.

**10.** The circuit court did not question Trooper Pope about his misleading statement, Further, there was no evidence in the record on appeal sufficient to make this *prima facie* showing.

**11.** The cases cited by the lower court in its dismissal order are not helpful because they deal with alleged problems at trial resulting in conviction, not problems with grand jury indictments. In *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the defendant asked leave to file a petition for an original writ of *habeas corpus*. He charged that since the sole basis of his conviction was perjured testimony, the state of California had confined him without due process and violated his Fourteenth Amendment rights. The court .agreed that a *criminal conviction* procured solely by the use of known perjured testimony was "without due process of law and in violation of the Fourteenth Amendment." *Id.* at Syl. Pt. 2.

The second case cited by the circuit court, *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842 (4th Cir.1964), also dealt with a *habeas corpus* proceeding attacking a conviction. In *Barbee* the police did not reveal exculpatory evidence to the prosecuting attorney, who consequently did not reveal it to defendant. The *Barbee* court reversed the conviction and held that the presentation of this evidence "might well have nurtured, even generated, a reasonable doubt as to guilt." *Id.* at 847.

Federal court cases discussing dismissal of indictments are somewhat instructive. Although most deal with prosecutorial misconduct, not fraudulent or intentionally misleading testimony of a witness, these cases do discuss how improper testimony may affect the decision-making of a grand jury, and what to do with questionably tainted indictments.

In *United States v. Lawson*, 502 F.Supp. 158 (D.Md.1980), the Maryland District Court found the prosecutor's questioning of a key witness was "deliberately misleading and calculated to create a false impression on the grand jury", and thus denied the defendants their constitutional right to an unbiased grand jury. *Id.* at 163. The *Lawson* court ruled an indictment obtained in this manner must be dismissed.

The court in *Lawson* next examined the issue of whether this dismissal should be with or without prejudice. That court noted that "[a]lthough defendants do have a constitutional right to an informed and unbiased grand jury, they have no constitutional right to bar forever investigation into their alleged criminal conduct." *Id.* at 172. The court noted that while it is possible for "outrageous" government activity to irrevocably prejudice a defendant's case on the merits, most prosecutorial misconduct is curable. Since there was no evidence the defendants were irrevocably prejudiced or that the pattern of prosecutorial misconduct was widespread, the indictments were dismissed *without prejudice*. *Id.* at 172–73.

Similarly, in the instant case, there is neither a showing that the defendant has been irrevocably prejudiced by the intentionally misleading statement, nor that any prosecutorial misconduct occurred.

Another instructional federal case is *United States v. Udziela*, 671 F.2d 995 (7th Cir.1982), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982). In *Udziela*, Edward Udziela was indicted for conspiracy to manufacture and distribute phencyclidine (PCP). Prior to trial the government discovered a key witness had perjured himself before the grand jury. The court discussed at length the effect of perjured testimony on grand juries and the resulting indictments. *Id.* at 999–1002. That court noted that when "over-zealous prosecutors" obtain indictments by knowingly presenting false evidence, courts have freely exercised their powers to dismiss indictments.[12] *Id.* at 998. The Seventh Circuit found no prosecutorial misconduct confronted them and held where "perjured testimony supporting an indictment is discovered before trial the government has the option of either voluntarily withdrawing the tainted indictment and seeking a new one ..." or requesting an *in camera* hearing to inspect the grand jury transcripts to determine if sufficient evidence remained, after removal of the perjured testimony, to support the indictment. *Id.* at 1001. The court reasoned that errors before a grand jury, such as perjured testimony, could easily be corrected during a trial with its incumbent procedural and evidentiary safeguards. Obviously the *Udziela* case is similar to the one before this Court, not only because of the finding of no prosecutorial misconduct, but also because the grand jury heard inaccurate testimony.

Both the *Udziela* and *Lawson* courts, when faced with improper testimony before the grand jury, chose to examine the issue in light of a balancing test. These courts balanced the deterrent objectives of dismissal, both with and without prejudice, against society's interest in the prosecution of those who violate the laws.[13] Neither

---

12. Most of the cases cited in *Udziela* dealt with failure to divulge exculpatory evidence or selective presentation of evidence before the grand jury.

13. A review of federal case law reveals that the federal courts do not favor the dismissal of an indictment even *without prejudice*, much less the dismissal of an indictment with prejudice. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

"In balancing [the opposing interests] in cases of alleged prosecutorial over reaching during grand jury proceedings, the federal courts have clearly established the principle 'that the dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized.'" *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980) (citing *United States v.*

found dismissal with prejudice in order, the court in *Lawson* concluding

> [w]hile the defendants are entitled to the remedy of dismissal for violation of their constitutionally protected rights, they are not entitled to the reward of permanent immunity respecting their alleged criminal conduct. Under the circumstances of this case, the costs to society are simply too high.

*Lawson,* 502 F.Supp. at 173.

■ This Court has favored a balancing test in a similar situation. In *Myers v. Frazier,* 173 W.Va. 658, 319 S.E.2d 782 (1984), in a discussion of plea bargains and dismissal of criminal charges, we noted favorably that multiple courts "hold that as a general rule a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." *Id.* 173 W.Va. at 669, 319 S.E.2d at 793. The Court went on to discuss the need to balance the defendant's rights versus the public interest in the effective administration of justice. *Id.* 173 W.Va. at 669, 319 S.E.2d at 790, 794 (citing *W.Va. R.Crim.P. 11*).

In the case before us, it is necessary to employ a balancing test as the *Lawson, Udziela,* and *Myers* courts have done, to weigh the defendant's rights against society's interest in bringing criminals to justice. The instant case deals with dismissal of an indictment because of intentionally misleading testimony, not a conviction either procured by perjury or by the withholding of exculpatory evidence. As *Udziela* pointed out, it is flawed reasoning to suggest that the consequences to the defendant of perjured testimony given before the grand jury are as severe as those of perjured testimony given at trial. *Udziela,* 671 F.2d at 1000. This rationale is flawed because it "misapprehends the limited function of the grand jury" to only assess probable cause, not the truth of the charges. *Id.* at 1000; *see also Noll,* 72 W.Va. at 552, 79 S.E. at 669.

This is not to say that abuses of the grand jury system will be allowed. This Court will be vigilant in preserving the integrity of the grand jury. Dismissal of an indictment which was obtained by prosecutorial misconduct might be justified.[14] Such dismissal may be *with prejudice,* however, only where the pattern of prosecutorial misconduct is so continued, flagrant and egregious as to warrant utilizing such dismissal as a deterrent to further misconduct. The record of the case before us presents no such pattern of prosecutorial misconduct.[15]

---

Owen, 580 F.2d 365, 367 (9th Cir.1978)). *Birdman* and *Owen* cite numerous cases to demonstrate this conclusion.

In *United States v. Fields,* 592 F.2d 638, 647 (2d Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) the Court stated the dismissal of an indictment is frequently seen as a "drastic remedy" and is justified only in order to achieve two possible objectives: "first, to eliminate prejudice to a defendant in a criminal prosecution", and second, to make certain the prosecution's attorneys keep their bargains. *Id.* at 647. Even dismissal of an indictment *without prejudice* may be an abuse of the court's discretion, especially if the relief granted is totally out of proportion to the wrong to be corrected. *Id.* Dismissal should be utilized only when the pattern of misconduct is long-standing and widespread. *Id.* at 648. *See also United States v. Samango,* 607 F.2d 877, 880–884 (9th Cir.1979).

Additionally, in *United States v. Blue* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966) the Supreme Court held evidence obtained in violation of Fifth Amendment rights would not bar the prosecution altogether. Such a ruling would interfere intolerably "with the public interest in having the guilty brought to book." *Id. See also United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1189 (4th Cir. 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

**14.** The United States Supreme Court in *Bank of Nova Scotia* indicated that prosecutorial misconduct could be remedied by means other than dismissal. Some violations may be punished as "contempt of court", others by chastisement of the prosecutor in a published opinion. 487 U.S. at 263, 108 S.Ct. at 2378, 101 L.Ed.2d at 243. Other violations may be dealt with by directing the prosecutor to show cause why he should not be disciplined and a request sent to the bar to initiate proceedings against him. *Id.* These remedies would allow the court to "focus on the culpable individual...." *Id.*

**15.** This case involves one misleading statement by a state trooper before the grand jury without the knowledge or consent of the special prosecutor.

We therefore hold, prospectively, as did the Seventh Circuit in *Udziela,* that where perjured or misleading testimony presented to the grand jury is discovered *before trial* and there is *no evidence of prosecutorial misconduct,* the State may withdraw the indictment without prejudice, or request the court to hold an *in camera* hearing to inspect the grand jury transcripts and determine if other sufficient evidence exists to support the indictment. The standard mandated by the United States Supreme Court in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) should be applied in this review. "[D]ismissal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." 487 U.S. at 256, 108 S.Ct. at 2374, 101 L.Ed.2d at 238 (citing *Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring)). Dismissal of an indictment based on improper testimony of a trivial or inconsequential nature would neither be in the interests of the efficient administration of justice, nor would it be dictated by the court's duty to protect the defendant's constitutional rights. In this review, the court must also ascertain that there was significant and material evidence presented to the grand jury to support all elements of the alleged criminal offense. If the record reveals that the improper evidence substantially influenced the decision to indict or that the remaining evidence is insufficient to support an indictment, the trial court should dismiss the indictment *without prejudice.*

There being no basis in the record for the trial court to have dismissed the instant indictment *with prejudice,* the next logical step in resolving this issue would be an examination of the grand jury transcripts to determine whether the error substantially influenced the decision to indict or if other sufficient evidence existed for the return of the indictment in question.

In the instant case, however, the state makes no objection to the dismissal of the indictment without prejudice, rendering such examination unnecessary.

For the reason stated in this opinion, we grant the writ of mandamus and direct the circuit court to revise its order to dismiss the indictment *without prejudice.*

Writ granted.