# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0209** (Berkeley County 16-F-77)

**Thomas Ferguson,**
**Defendant Below, Petitioner**

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Thomas Ferguson, by counsel Matthew T. Yanni, appeals the Circuit Court of Berkeley County's February 16, 2017, order effectively sentencing him to fifteen to fifty-four years of incarceration following his three second-degree robbery convictions. The State of West Virginia, by counsel Robert L. Hogan, filed a response in support of the circuit court's order. On appeal, petitioner argues that his indictment should have been dismissed with prejudice because the State "joined in a lie" told by a detective to the grand jury.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 17, 2016, Detective Adam Albaugh of the Martinsburg City Police Department ("Police Department") testified before a Berkeley County grand jury concerning three store robberies in Berkeley County. Detective Albaugh recounted, first, that he received a report of a department store robbery that occurred on December 21, 2015. The suspect was reported to be a black male, between five feet, seven inches tall and five feet, eight inches tall, in his early forties, and wearing a light cap and black jacket. The suspect came to a cash register, pointed a gun wrapped in a bag at the cashier, and told him to fill the bag. The suspect left with $560. Detective Albaugh reported to the department store and reviewed the security footage.

Detective Albaugh also testified that, two days later, two restaurants located on the same street were robbed within several hours of one another. The suspect was described as a black male with a heavy black jacket and black hood tied around his face. He was further stated to be armed and carrying a plastic grocery bag, which he used to conceal a pistol at one restaurant and order money be placed into at another restaurant. The suspect took $216 from one restaurant and $223 from the other. An officer responding to the scene passed petitioner leaving the area on bike wearing a thick, dark jacket, hood, and jeans. Detective Albaugh testified that petitioner,

1

who he reported to be fifty-six years old at the time and approximately five feet, seven inches tall, was known to the Police Department.

Detective Albaugh further testified that another officer within the Police Department reviewed the security footage from the restaurants and identified petitioner as a suspect. Detective Albaugh subsequently created a photo lineup that included petitioner, which he showed to the cashier working at the department store at the time it was robbed. The cashier identified petitioner as the individual who robbed the department store. Employees of one of the robbed restaurants also positively identified petitioner from a photo lineup.

Additionally, Detective Albaugh testified that another officer reviewed surveillance footage from a Walmart located near the two restaurants that had been robbed. The video shows petitioner in a black jacket and hood enter the store, take several empty plastic bags, and exit the store.

Finally, Detective Albaugh testified that the Police Department located a black jacket belonging to petitioner hidden under his ex-girlfriend's pillow during a search of her home. The Police Department also executed a search warrant at petitioner's home. Detective Albaugh testified that they recovered "a heavy black hooded jacket . . . along with a pistol and a holster."

The grand jury subsequently returned a three-count indictment charging petitioner with one count of first-degree robbery and two counts of second-degree robbery. Petitioner moved to dismiss the indictment on the ground that Detective Albaugh misrepresented to the grand jury that a pistol was recovered during the search of petitioner's home.[1] The State responded that, although the grand jury transcript does say "pistol and a holster," the audio recording of the grand jury proceeding is less clear. The State disputed the accuracy of the transcript and argued that Detective Albaugh may have said "pistol n holster."[2] The State also argued that dismissal was not warranted on account of the other evidence presented to the grand jury.

On November 17, 2016, the parties appeared for a pretrial hearing, at which the circuit court addressed the motion to dismiss the indictment. The circuit court denied petitioner's motion to dismiss, finding no evidence of prosecutorial misconduct or an intentionally false statement by Detective Albaugh and further finding that sufficient material and significant evidence had been presented to the grand jury to support the indictment.

Petitioner's trial commenced on December 6, 2016. At trial, Detective Albaugh testified that, despite what the grand jury transcript says, he did not testify that a "pistol and a holster" were recovered at petitioner's home. Detective Albaugh testified that he believed the court reporter mis-transcribed what he said and that he said "pistol holster." He predicated this belief

---

[1]An "air pistol" was recovered in a wooded area at or near petitioner's home approximately three months after the robberies, but not during the search of petitioner's home about which Detective Albaugh testified before the grand jury.

[2]The State asserted that Detective Arbaugh's wording was unclear because it sounded as though made at the end of a breath.

on the fact that he was reading from a report and the report says "pistol holster." At the conclusion of petitioner's three-day trial, the jury found him guilty of second-degree robbery, a lesser included offense of the first-degree robbery charge, and the two second-degree robbery charges. On February 9, 2017, the circuit court sentenced petitioner to five to eighteen years of incarceration for each second-degree robbery conviction. The sentences were ordered to run consecutively, for an effective sentence of fifteen to fifty-four years. The circuit court memorialized petitioner's sentence in a February 16, 2017, order, and it is from this order that petitioner appeals.

On appeal, petitioner argues that his indictment should have been dismissed due to Detective Albaugh's misstatement to the grand jury. Petitioner contends that the misstatement substantially influenced the grand jury's decision to indict because "[i]t would be hard to imagine a more crucial piece of evidence in an armed robbery case than the handgun used in the robbery." Petitioner further argues that the State "joined in a lie" by asserting that Detective Albaugh said "pistol n holster" instead of "pistol and a holster," which amounts to outrageous conduct requiring dismissal with prejudice.

We apply a de novo standard of review of a motion to dismiss an indictment. *State v. Spinks*, -- W.Va. --, 803 S.E.2d 558, 572 (2017) (citation omitted). We have previously held that, "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl. Pt. 2, *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989). Once a prima facie case of willful, intentional fraud in obtaining an indictment has been established, a defendant "is entitled to a hearing with compulsory process." *Id.* at 663, 383 S.E.2d at 845, Syl. Pt. 3, in part (citation omitted).

> When perjured or misleading testimony presented to a grand jury is discovered before trial and there is no evidence of prosecutorial misconduct, the State may withdraw the indictment without prejudice, or request the court to hold an *in camera* hearing to inspect the grand jury transcripts and determine if other sufficient evidence exists to support the indictment.

*Id.*, Syl. Pt. 5. Generally, "a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." *Id.* at 663, 383 S.E.2d at 845, Syl. Pt. 4, in part (internal quotations and citation omitted). Dismissal is only appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from substantial influence of such violations." *Id.*, Syl. Pt. 6, in part (internal quotations and citation omitted). Finally, "[i]n reviewing the evidence for sufficiency to support the indictment, the court must be certain that there was significant and material evidence presented to the grand jury to support all elements of the alleged criminal offense." *Id.*, Syl. Pt. 7.

3

Although petitioner argues willful and intentional fraud in obtaining the indictment, he presented no evidence of such. He similarly offers no evidence of prosecutorial misconduct.[3] Rather, the only evidence presented was that Detective Albaugh misspoke or that his testimony was mistakenly transcribed. Nonetheless, the circuit court afforded petitioner a hearing at which it reviewed the grand jury transcript to determine whether sufficient evidence existed to support the indictment. As recounted above, the grand jury heard substantial evidence, apart from the testimony concerning a pistol, to support the charges in the indictment.[4] The grand jury heard that a black male wearing a black jacket entered the department store, pointed a gun wrapped in a bag at the cashier, and demanded that the cashier fill the bag. The individual left with $560, and the cashier positively identified petitioner in a photo lineup. The grand jury also heard that a black male wearing a black jacket demanded that money be placed in a plastic bag at one restaurant and left with $216. At the second restaurant, a black male presented a pistol concealed in a plastic bag, demanded money, and left with $223. Employees at this restaurant positively identified petitioner from a photo lineup. Petitioner was also seen in the area close to the time that the restaurants were robbed and identified on various security surveillance videos, including at a nearby Walmart picking up plastic bags. Accordingly, the circuit court properly denied petitioner's motion to dismiss the indictment.

---

[3]Even assuming prosecutorial misconduct here, dismissal with prejudice would not be proper. Dismissal with prejudice is appropriate "only where the pattern of prosecutorial misconduct is so continued, flagrant and egregious as to warrant utilizing such dismissal as a deterrent to further misconduct." *Pinson*, 181 W.Va. at 668, 383 S.E.2d at 850. Petitioner fails to argue, let alone establish, a pattern of prosecutorial misconduct.

[4]West Virginia Code § 61-2-12 provides, in relevant part, that

> (a) Any person who commits or attempts to commit robbery by:
>
> (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.
>
> (b) Any person who commits or attempts to commit robbery by placing the victim in fear of bodily injury by means other than those set forth in subsection (a) of this section or any person who commits or attempts to commit robbery by the use of any means designed to temporarily disable the victim, including, but not limited to, the use of a disabling chemical substance or an electronic shock device, is guilty of robbery in the second degree and, upon conviction thereof, shall be confined in a correctional facility for not less than five years nor more than eighteen years.

For the foregoing reasons, the circuit court's February 16, 2017, sentencing order is hereby affirmed.

Affirmed.

**ISSUED:** March 12, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

5